IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| LUIS E. CRUZ, | Case No. 4:06CV00001 |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | By: Jackson L. Kiser |
| | Senior United States District Judge |
| TOWN OF SOUTH BOSTON, VA LANDFILL OPERATIONS, | |
| Defendant. | |

Before me now is the Defendant's Motion for Summary Judgment under Federal Rule of Civil Procedure 56. For the reasons stated herein, the Defendant's Motion for Summary Judgment will be **GRANTED**.

**I.      STATEMENT OF THE CASE**

On November 4, 2002, the Town of South Boston ("the Town") hired Luis C. Cruz ("Cruz") to work as an equipment operator at the Town's landfill. Equipment operators work at the landfill six days a week. They dump, compact, and cover the trash. This operation requires four equipment operators to be on duty. Each equipment operator must have a commercial driver's license and be able to operate a compactor, bulldozer, track hoe, off-road truck, and a special piece of Caterpillar-manufactured equipment known as the pan. All four equipment operators work closely together, and when one operator is absent, the landfill supervisor, Brian Pumphrey ("Pumphrey"), must either arrange for a replacement or cover the shift himself. When equipment operators fail to notify Pumphrey of an absence in sufficient time for him to locate a substitute, Pumphrey must fill in for

1

that equipment operator and delay performing his own supervisory duties. This creates a hardship for the Town.

Employees of the Town receive one vacation day and one sick day for each month they work. If an employee does not use these days at once, they accrue for the employee's future use. The Town requires Equipment Operators to give sufficient notice of intended absences.

Cruz habitually failed to report to work when expected and often contacted Pumphrey by telephone to inform him that he would not work a given shift moments before it began. On several occasions, the Town informed Cruz that his attendance record was not satisfactory. On June 10, 2003, Alan Auld ("Auld"), the Director of Public Works, informed Cruz that he had taken too much leave time, fifteen days in six months, and that continued abuse of the Town's attendance policy could cause the Town to terminate his employment. Two days later, Auld assigned Cruz a score of fifty out of one hundred on his annual employee evaluation. The score was largely a result of Cruz's unsatisfactory attendance and abuse of the Town's leave policy by taking too many unscheduled absences. As a result of the annual evaluation, Cruz did not qualify for a raise under the Town's policies.

Cruz and Ault met again on January 13, 2004. This time, Cruz had requested one week of vacation time for a trip to Daytona Beach, Florida. Auld denied Cruz's vacation request because he had not saved a sufficient number of vacation days. Again, Auld reminded Cruz that he could not take unscheduled leave and that if he did, the Town could fire him. However, over the following weeks, Cruz worked sufficient overtime to accrue enough vacation days to cover his planned vacation. After the vacation, Cruz was next scheduled to work on February 16, 2004. Shortly before his shift began, Cruz left a message with the landfill's office system that he was "too

tired from his trip to come in to work." The next day, Cruz reported for work ten minutes late. At that time, Auld fired Cruz for his repeated unscheduled absences and failure to timely notify the office of those absences.

Cruz contends that the Town discriminated against him based on his race and national origin. He claims that Pumphrey made racially derogatory remarks concerning Cruz's race and national origin. Pumphrey denies this allegation. Cruz also asserts that two employees missed more time than he but remain employed at the land fill.

## II. PROCEDURAL BACKGROUND

Upon his termination, Cruz filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") on June 14, 2004. His complaint alleged that the Town denied him a raise and discharged him because of his race and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended. The EEOC determined that the Town had discriminated against Cruz and referred the matter to the United States Department of Justice. The Department of Justice declined to bring a suit on Cruz's behalf and issued him a right to sue letter on October 13, 2005.

Cruz, acting as his own attorney, filed this Complaint on January 12, 2006 and an Amended Complaint on May 5, 2006. These pleadings allege that the Town fired Cruz and denied him a wage increase based on his race and nationality. The Town filed a Motion for Summary Judgment on November 18, 2006. Cruz has not filed a response. The parties presented oral arguments on December 14, 2006 at 9:30 a.m. Consequently, the issue is now ripe for decision.

## III. LEGAL STANDARD

3

Case 4:06-cv-00001-JLK-mfu   Document 34   Filed 12/19/06   Page 3 of 10   Pageid#: 359

Summary judgment is appropriate when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue of a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1129 (4th Cir. 1987). Nevertheless, when the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial and summary judgment is appropriate; that is, the moving party is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## IV.     DISCUSSION

A plaintiff may prove discrimination under Title VII of the Civil Rights Act of 1964 in two ways. "First, a plaintiff may establish a claim of discrimination by demonstrating through direct or circumstantial evidence that . . . discrimination motivated the employer's adverse employment decision." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (citing 42 U.S.C. §2000e-2(m) (2003). Under this method, sometimes called the "mixed motive" theory, the plaintiff need not establish that the impermissible reason was the only factor behind the employer's decision but only that it was a motivating factor. *Id*. In the event that a plaintiff makes the requisite showing, the employer may limit its liability to declaratory relief, injunctive relief, and

4

attorney's fees and costs by showing that it would have made the same decision without considering the impermissible motivating factor. 42 U.S.C.A. § 2000e-5(g)(2)(B) (2003).

The plaintiff may also proceed under a "pretext" framework, through which the plaintiff must show that the employer's stated reasons for its decision are a pretext. *Hill*, 354 F.3d at 285. Under this method, the plaintiff must first establish a prima facie case of discrimination by proving that "(1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances." *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 133 (4th Cir. 2002). Once the plaintiff makes this showing, the employer must provide a neutral reason for the action. *Hill*, 354 F.3d at 285. If the employer meets this burden, then the plaintiff must prove by a preponderance of the evidence that the employer's reasons were a pretext. *Id*.

Cruz has not distinctly stated upon which method of proof his case rests. Therefore, I will analyze whether he has produced enough evidence to survive summary judgment under either method. First, I do not believe that Cruz may proceed under the pretext theory because he has not produced enough evidence to prove a prima facie case of discrimination. Specifically, he has not shown a genuine issue over whether he performed his job in a satisfactory manner and whether the Town treated similarly situated employees differently.

Cruz has failed to produce any evidence that he performed his job satisfactorily. Instead, all of the evidence that Cruz has presented indicates that his performance was not satisfactory. This evidence includes letters reprimanding Cruz for his improper use of leave time, a poor performance evaluation, and attendance records demonstrating his repeated absences from work.

5

This case is similar to *King v. Rumsfeld*, in which the Fourth Circuit determined that an employee did not prove he had satisfactorily performed his job when his employer produced negative performance reviews and letters memorializing warnings to the employee about inadequate performance. 328 F.3d 145, 149 (4th Cir. 2003). In *King*, the Plaintiff's evidence consisted of testimony that he had adequately performed his job from himself and his fellow employees. *Id.* The court found the plaintiff's evidence irrelevant and noted that the plaintiff's "own testimony, of course, cannot establish a genuine issue as to whether [he] was meeting [the employer's] expectations." *Id.* Like in *King*, in this case the record contains unfavorable performance reviews and memorialized warnings documenting Cruz's deficiencies, particularly his use of unscheduled absences and failure to give adequate notice of those absences. Unlike *King*, in this case Cruz has not produced any evidence to the contrary. Therefore, Cruz has failed to produce sufficient evidence to create a genuine issue over whether he performed his job in a satisfactory fashion.

Moreover, even if Cruz could demonstrate that he had adequately performed his job, he cannot show that the Town treated similarly-situated employees not of his protected class differently. A similarly situated employee is one that has engaged in the same type of misconduct as the plaintiff. *Bryant*, 288 F.3d at 134. The two employees to whom Cruz compares himself did not engage in similar misconduct.

Cruz contends Shawon Edwards-Coles was a similarly situated employee who had significant absences from the land fill but was not terminated for her absences. However, she was a secretary, not a heavy equipment operator. Therefore, her absences could be more easily filled because a temporary employee without a commercial driver's license could substitute for her. Moreover, the Town approved her absences, which were for medical reasons, in advance. Indeed,

she trained her own replacement for one of her absences.

Cruz also compares himself to James Brandon, another heavy equipment operator. Unlike Cruz, however, Brandon used time he had already accumulated for his absences and did not run a "zero or negative balance" on sick and vacation days. Additionally, Brandon consistently provided advance warning to the Town before his absences. Finally, even though he had previously had difficulties with excessive absenteeism, Brandon was disciplined in a manner similar to Cruz by receiving reprimand letters and not receiving a wage increase.

Consequently, Cruz cannot establish that the Town treated other similarly situated employees who were not members of Cruz's protected class differently. Brandon and Edwards-Coles were not similarly situated to Cruz. While both employees were frequently absent from the landfill, they did not take excessive unscheduled leave and they generally provided the Town with adequate notice of their absences. As a result, Cruz has not produced sufficient evidence to proceed under a "prima facie" theory of proof.

Thus, Cruz's claims may only survive this motion for summary judgment if he can produce sufficient evidence to proceed under a mixed motive method of proof. In this case, Cruz alleges that Pumphrey frequently made derogatory remarks concerning Cruz's race and nationality. Certainly, this is the type of evidence that would support a mixed motive Title VII claim.

In the Fourth Circuit, to succeed under a mixed motive theory, the Plaintiff must show that "the person allegedly acting pursuant to a discriminatory animus" was the " 'actual decisionmaker' " behind the employment action. *Hill*, 354 F.3d at 289–90 (*quoting Reeves v. Sanderson*, 530 U.S. 133, 151–52 (2000)). However, "When a formal decisionmaker acts merely as a cat's paw for or rubber-stamps a decision, report, or recommendation actually made by a subordinate, it is not

7

inconsistent to say that the subordinate is the actual decisionmaker." *Id*. at 290. Nonetheless, the Court has also stated that an employee who did not make the actual adverse employment decision will not qualify as the decisionmaker even when "he had a substantial influence on the ultimate decision or because he has played a role, even a significant one, in the adverse employment decision." *Id*. at 291. Of course, the burden rests on the plaintiff to prove that the person who allegedly acted with discriminatory intent was the actual decisionmaker. *Id*.

In this case, the evidence does not show that Pumphrey was the actual decision maker who fired Cruz and denied his wage increase. Rather, Auld was the individual who ultimately made those assessments for the town. In his affidavit Auld states that he made the decisions to terminate Cruz and not to allow him a wage increase. He also states that the bases for his decisions were Cruz's unscheduled leave time and failure to provide the town with sufficient notice before such absences. Apparently, Auld made the contested decisions. Cruz has not produced any evidence that indicates this is inaccurate or that Auld acted as a "cat's paw" for Pumphrey. Therefore, I do not believe that the evidence of Pumphrey's alleged inappropriate remarks would support a Title VII claim under the mixed motive theory because no evidence before me indicates he was the actual decisionmaker.

None of the other facts that Cruz alleges are sufficient to create a genuine issue of whether the Town fired him for a discriminatory reason under the mixed motive theory. I have already considered these allegations and determined that they do not even establish a prima facie case of discrimination. Consequently, I do not believe that they can withstand a motion for summary judgment under the mixed motive method of proof. *See Jones v. Southcorr, L.L.C.*, 324 F. Supp. 2d 765, 775–76 (M.D.N.C. 2004) (*citing Rishel v. Nationwide Mutual Ins. Co.*, 297 F. Supp. 2d 854,

8

866 (M.D.N.C. 2003) (requiring a plaintiff to prove a prima facie case of discrimination under the mixed motive theory when the plaintiff's only evidence of discrimination was circumstantial).

Moreover, even if Cruz does not need to establish a prima facie case to proceed under the mixed motive framework, I do not believe that a reasonable jury could return a verdict in his favor. Cruz has only established that he is a member of a protected class, that he was disciplined and ultimately discharged from his job at the landfill, and that the Town did not fire other employees outside of his protected class who also missed significant time. The Town, however, has clearly demonstrated that Cruz had not performed his job satisfactorily because of his unscheduled absences and failure to timely notify the Town of those absences. The Town has also shown that the other employees who missed significant time scheduled their absences in advance. Consequently, Cruz's evidence does not create a genuine issue regarding the Town's motives in firing Cruz. *See*, *Hill*, 354 F.3d at 283, 299 (finding that the plaintiff's membership in a protected class, her discharge, biased statements made to her by an employee who was not the actual decisionmaker, and her replacement by a person who was not a member of her protected class did not create a genuine issue over whether the employer fired the plaintiff for discriminatory reasons under the mixed motive theory).

Finally, I recognize that the EEOC reached a different conclusion than I do today, but the EEOC had a less developed factual record before it when it found that the Town discriminated against Cruz. The EEOC only had letters from the town and time sheets reflecting Cruz and other employees work patterns before it. Based on that evidence, the EEOC concluded that Cruz "was denied a wage increase and disciplined more severely than others similarly situated for unsatisfactory attendance because of his race, Puerto Rican and national origin, Hispanic." In contrast, on the present motion, I have before me several affidavits from the Town's employees

9

which were not before the EEOC.

The evidence before the EEOC tended to support the EEOC's finding that Cruz's attendance record was not sufficiently distinguishable from other employees who the Town retained. The additional evidence before me, however, indicates that the Town did not terminate Cruz for excessive absences but for his abuse of the attendance policy, most notably his unscheduled absences and failure to provide sufficient warning of those absences to the Town. The affidavits indicate that the employees who missed a similar number of days as Cruz generally scheduled their absences in advance and gave sufficient warning to the town when they missed work. Therefore, the record is more developed than it was when the EEOC made its ruling and supports the conclusion that the Town did not fire Cruz for a discriminatory purpose.

## V. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment will be **GRANTED**.

The Clerk will be directed to send a certified copy of this Memorandum Opinion and the attached Order to all counsel of record. The Clerk will be further directed to strike this case from the active docket of this Court.

ENTERED this 19th day of December, 2006.

s/Jackson L. Kiser
Senior United States District Judge